

**ORDERED in the Southern District of Florida on July 22, 2013.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:

CASA CASUARINA, LLC.,                    Case No. 13-25645-LMI

    Debtor.

_____/          Chapter 11

**ORDER GRANTING DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER
(1) AUTHORIZING DEBTOR TO SCHEDULE AN AUCTION SALE OF
DEBTOR'S PROPERTY; (2) APPROVING BIDDING PROCEDURES AND
INITIAL STALKING HORSE BID IN CONNECTION WITH AUCTION SALE;
(3) APPROVING FORM AND MANNER OF NOTICE OF AUCTION SALE; (4)
SCHEDULING A SALE HEARING TO APPROVE SALE; (5) APPROVING THE
ADVANCE OF COSTS FOR MARKETING AS A FUTURE ADVANCE BY VM
SOUTH BEACH, LLC; AND (6) APPROVING THE SALE OF THE DEBTOR'S
INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS
<u>AND ENCUMBRANCES, WITH LIENS TO ATTACH TO PROCEEDS</u>**

THIS MATTER, came before the Court for hearing on Tuesday, July 16, 2013 upon Casa Casuarina, LLC's (the "Debtor") motion for the entry of an Order (1) authorizing the Debtor to schedule an auction sale of the Debtor's real and personal property, (2) approving bidding procedures in connection with auction sale, (3) approving form and manner of notice of sale, (4) scheduling a sale hearing to approve sale, (5) approving the advance of costs for marketing, and (6) approving the sale of the Debtor's interest in the real and personal property free and clear of liens, claims, and encumbrances [D.E. 27] (the "Sale Motion").  The Court, having reviewed the Sale Motion, heard the modifications to the relief requested in the Sale Motion negotiated by parties in interest as stated on the record in open court, and determined that the relief requested in the Motion with such modifications is in the best interests of Casa Casuarina, LLC, as debtor and debtor in possession (the "Debtor"), its estate, the creditors and all other parties-in-interest, it is hereby FOUND AND DETERMINED THAT:

A.    This Court has jurisdiction over this matter and over property of the Debtor pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper in this district pursuant to 28 U.S.C. § 1408;

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b);

C.    Good and sufficient notice of the relief sought in the Motion has been given in accordance with Bankruptcy Rule 2002 and 6004, and no other or further notice shall be required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties-in-interest.  A response was filed by the Miami-Dade County Tax Collector, and the concerns raised in this response are addressed herein;

D.       The Bid Procedures (defined below) and proposed Sale Notice (defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof;

E.       The Bid Procedures and initial stalking horse bid as set forth herein are fair, reasonable, and appropriate and are designed to maximize the sale price of the Debtor's real property;

F.       The proposed marketing efforts and bidding process as described in the Motion are fair and reasonable, and designed to fully expose the Debtor's assets to the market, and the advance of such marketing expenses by VM South Beach, LLC ("VM") as a future advance secured by the lien of its pre-petition mortgage is reasonable and made in good faith; and

G.       The entry of this Order is in the best interests of the Debtor, its estate, creditors, and all other parties-in-interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.       The Sale Motion is GRANTED as provided in this Order, pending a final sale hearing (the "Sale Hearing") and entry of a sale order (the "Sale Order") approving the sale of the Debtor's real and personal property, as defined in the Sale Motion and exhibits attached thereto (the "Property").  The Court shall conduct the Sale Hearing on September 18, 2013, 2:00 p.m. (the "Sale Hearing Date"), at the United States Bankruptcy Court, 51 SW 1st Ave., Room 1409, Miami, Florida 33130.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Sale Hearing.  The Sale Hearing shall be an evidentiary hearing on all matters related to the Sale Motion.

2.      The Debtor shall conduct an auction sale (the "Auction") of the Property on the date that is one day before the Sale Hearing Date, at 10:00 a.m. (the "Auction Date"), pursuant to the terms and conditions of the following bid procedures (the "Bid Procedures"), which are approved in their entirety:

(a.)    **Marketing Plan**:  The Debtor, by separate application [D.E. 14], is seeking to retain the services of the Lamar P. Fisher and Fisher Auction Company (the "Auctioneer") as well as Jill Hertzberg, Jill Eber and Coldwell Banker Residential Real Estate (the "Cooperating Broker"), and to implement an extensive Marketing Plan to advertise the sale of the Property and to conduct the auction sale thereof (the "Marketing Plan").

(b.)    **Participation Requirements**:  Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must,

(i.)    No later than 5:00 p.m. on the date that is three business days before the Auction Date (the "Bid Deadline"):

(x.)    wire into the trust account of Marshall Socarras Grant, P.L., an escrow deposit of $3,000,000.00; and

(y.)    submit to Marshall Socarras Grant, P.L., Attn. Joe M. Grant, Esq., proof of available funds or a financing commitment, at a financial institution located within the United States and otherwise in form and content satisfactory to the Debtor, of a minimum of $40,000,000.

(z.)    Any party that complies with this subsection shall be deemed a "Qualified Bidder."

(ii.)   Any secured creditor holding a lien against the Property shall automatically be deemed a Qualified Bidder and shall not be required to comply with subsection (a) above.  For avoidance of doubt, VM is deemed to be a Qualified Bidder.

4

(c.)  **Stalking Horse Bid**:  The initial bid for the purchase of the Property shall be VM's stalking horse bid in the amount of $25,000,000, comprised of cash in the amount of $646,133.74 for the payment of senior secured tax claims and of a credit bid in the amount of $24,353,866.26 (the "Stalking Horse Bid").  No break-up fee is being sought in connection with the Stalking Horse Bid.  **The Stalking Horse Bid is only an initial bid, and is without prejudice to VM making additional or further bids, which may be cash bids, credit bids or combinations of both, in accordance with the terms of this Order.**  VM estimates the total amount of its credit bid will be $32,707,426.13, plus (i) interest, fees, costs, and charges accruing after July 1, 2013, (ii) $50,000 advanced for marketing expenses pursuant to this Order, and (iii) amounts advanced for insurance, security and fire-repair expenses made pursuant to this Court's *Order Approving Withdrawal of VM South Beach, LLC's Emergency Motion for the Appointment of a Chapter 11 Trustee and Granting Related Relief*. In the event that there are Qualified Bidders in addition to VM, then no later than 5:00 p.m. on the date that is one business day before the Auction, VM shall file a notice with the Court of the updated amount of its total credit bid, as may have been adjusted by the Court pursuant to paragraph 6 below.

(d.)  **Participation in Auction**:  Provided that there are Qualified Bidders in addition to VM, the Debtor, by and through the Auctioneer, will conduct the Auction on the Auction Date at the Property, which is located at 1116 Ocean Drive, Miami Beach, FL 33139.  If VM is the only Qualified Bidder, the Auction will be deemed to have occurred, and the Debtor shall submit VM's Stalking Horse Bid to the Court for final approval at the Sale Hearing.

(e.)  **Auction Procedures**:  At the Auction, the minimum initial overbid shall be the sum of the Stalking Horse Bid and $500,000.  Subsequent bids shall be in increments of $500,000.00; provided, however, that at any time in the course of the Auction, the Auctioneer may reduce the incremental bidding to an amount not less than $250,000.00.  Bidding at the Auction shall continue until such time as the Auctioneer, in the exercise of his business judgment, determines that the highest and best bid (the "Successful Bid") has been submitted by a Qualified Bidder (the "Successful Bidder").  The Auctioneer reserves the right to announce at the Auction additional procedural rules for conducting the Auction in the exercise of its business judgment, so long as such rules are not inconsistent with the terms of this Order.

(f.)  **Successful Bid**:  After the conclusion of the Auction, the Successful Bidder and Back Up Bidder (as defined below) shall fully execute an asset purchase agreement substantially in the form attached hereto as Exhibit "A" (the "Purchase

5

Agreement"), which may be modified hereafter, but shall include a purchase price (specifying any amount to be credit bid), shall be subject to approval by this Court, and shall have no due diligence or financing contingencies. The Debtor shall submit the Successful Bid for approval to the Bankruptcy Court at the Sale Hearing. At the Sale Hearing, the Debtor intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Debtor to consummate the Back Up Bid immediately (within five days) after a default under the Successful Bid, without further order of the Court. Promptly following the conclusion of the Sale Hearing, the Debtor shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

(g.)    **Deposit**. Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall deposit an additional sum (the "Additional Deposit"), such that the sum of the $3,000,000.00 escrow deposit and the Additional Deposit together shall equal 10% of the Successful Bid. (Collectively, the $3,000,000.00 escrow deposit together with the Additional Deposit shall be referred to hereafter as the "Deposit"). The Deposit will be wired to Marshall Socarras Grant, P.L. to be held in the escrow account of Marshall Socarras Grant, P.L. (the "Deposit Agent"). The Deposit shall be held without interest and shall be applied against the Purchase Price at Closing. Notwithstanding anything to the contrary in this paragraph, the Deposit and Additional Deposit shall be calculated without including the amount of any credit bid in the Successful Bid.

(h.)    **Post Auction Proof of Funds**. Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall provide to Marshall Socarras Grant, P.L., proof of funds or financing commitment for the Purchase Price (less the amount of any credit bid).

(i.)    **Closing**: Closing shall take place five days after the entry of the Sale Order. The Debtor shall request that the Sale Order be immediately effective; that any stay imposed by Fed.R.Bankr.P. 6004, or any similar provisions of the Bankruptcy Rules, is waived; and that closing shall occur notwithstanding the filing of any notice of appeal, motion for reconsideration or rehearing, or request for similar relief, unless a stay is obtained from a court of competent jurisdiction. The Successful Bidder must be prepared and must in fact consummate the purchase of the Property in accordance with the Purchase Agreement. Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Property because of a breach or failure on the part of the Successful Bidder, then the Debtor may (within five days) elect in its business judgment to close the

transaction with the Back Up Bidder.  If the Successful Bidder fails to close due to a breach or failure on the part of the Successful Bidder, the Debtor shall retain the Deposit as liquidated damages.  The ultimate purchaser, upon closing, whether the Successful Bidder or the Back Up Bidder, shall be referred to herein as the "Purchaser."   The Undisputed Portion (defined below) of any secured claim against the Property shall be paid in full at closing

(j.)     **As Is Where Is**:  The Property will be sold in its "As Is", "Where Is" condition and with all faults, with no guarantees or warranties express or implied.

(k.)     **No Conditions or Contingencies**:   The Property will be sold without any financing or other conditions, other than marketable title.

(l.)     **Credit Bid**:  Any Qualified Bidder holding a secured claim against the Property shall be entitled to credit bid the full amount of the claim,[1] or such amount as is (i) agreed to between the Debtor and the secured creditor, or (ii) ordered by the Court (the "Credit Bidder"), whether or not the claim is disputed, provided that if (a) the Credit Bidder is ultimately the Purchaser, and (b) such claim is subsequently disallowed (in whole or in part), the Purchaser shall repay to the Debtor's estate the amount by which the credit bid exceeds the allowed amount of the secured claim. In order to credit bid, the Credit Bidder must escrow with the Debtor's attorneys, funds (in cash or its equivalent) sufficient to satisfy any real and personal property tax liens asserted to be senior to the Credit Bidder's lien. To the extent any dispute exists as to the extent, validity and/or priority of the tax liens, the undisputed portion shall be paid at Closing, and the disputed portion will remain in escrow pending a determination by the Court of the disputed portion of the liens.

(m.)     **Sale Free and Clear of Liens, Claims and Conditions**:  The Property will be sold free and clear of all liens, claims and encumbrances, but subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; and real and personal property taxes for year of Closing and subsequent years; provided, that there exists at Closing no violation of the

---

[1]      Including any amounts advanced pursuant to applicable non-bankruptcy law, any amounts advanced pursuant to an order of this Court, or any amounts deemed part of an allowed secured claim.

foregoing and nothing preventing use of the Property for residential or commercial purposes.

(n.)    **Real Estate Commissions**:  The Auctioneer, Cooperating Broker, and the buyer's duly registered broker, are the only parties that shall be entitled to a commission in connection with this transaction, to which they shall be entitled only upon closing.  The Auctioneer and Cooperating Broker will each be entitled to a commission of not more than 2% of the purchase price, which is included the buyer's premium, as set forth in their retention application.   The buyer's registered broker will be entitled to a commission of 1% of the purchase price, which is included in the buyer's premium.  The Purchaser shall indemnify and hold the estate harmless for any other claimed real estate commissions.  If the Property is sold by Credit Bid Alone,[2] then the sole commissions due as a buyer's premium shall be 1% to Cooperating Broker and 1% to the Auctioneer.  Whether the sale is by cash sale or Credit Bid Alone, the Purchaser will be required to pay (at Closing) the buyer's premium, which shall be 4% for any cash sale;  2% for any sale by Credit Bid Alone; or, for a sale to a secured creditor for greater than the value of the secured creditor's secured claim, 2% of the amount credit bid plus 4% of the amount by which the Successful Bid exceeds the value of the secured creditor's secured claim, excluding any amount of cash or equivalent (i) escrowed to pay off asserted senior liens, or (ii) paid as a buyer's premium.

(o.)    **Objections**:  Objections, if any, to the Debtor's request for approval to sell the Property to the Successful Bidder or Back Up Bidder, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefor; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be electronically filed with the Court in this case no later than 6:00 pm on the day before the Sale Hearing Date.  Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing.  The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the Purchase Agreement.

3.    The form of the Notice of Sale and Bidding Procedures, substantially in the form

attached as Exhibit "B" to the Sale Motion (the "Sale Notice"), complies with the Federal Rules

---

[2]    The term "Credit Bid Alone" shall refer to a Credit Bid whereby the entirety of the bid, other than any amount of cash or equivalent (i) escrowed to pay off asserted senior liens, or (ii) paid as a buyer's premium, is by credit bid.

of Bankruptcy Procedures, and the Sale Notice is hereby approved in all respects.

4.  Service of the Sale Notice by first class US mail, postage prepaid, shall constitute good and sufficient notice of the Bid Procedures, the Auction, the Sale Hearing, and the remainder of the relief requested in the Motion, and any requirements for other or further notice shall be waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9007 and pursuant to this Court's powers under section 105 of the Bankruptcy Code.

5.  No later than forty-five days prior to the Auction, any secured creditor holding a lien on the Property which is (a) scheduled as disputed, or (b) unscheduled, shall file a proof of claim.  This deadline shall apply only to the extent that a secured creditor seeks to credit bid or be paid at the closing of the sale, and shall have no bearing on the allowance or disallowance of the claim.

6.  No later than thirty days prior to the Auction (the "Objection Deadline"), any party in interest may dispute the secured claim of any secured creditor for purposes of the auction sale.  Such a dispute ("the Dispute") may be by an objection to a proof of claim (for any party with standing to object to such a claim), or otherwise by a motion filed with the Court. Any Dispute shall set forth the name of the secured claim or lien being disputed (the "Disputed Claim"), the portion of the Disputed Claim which is disputed, and the basis for the dispute.  For purposes of distribution of funds at closing, the amount of the Disputed Claim which is undisputed, if any, shall be referred to as the "Undisputed Portion."

7.  The Debtor is hereby authorized and empowered to take such actions, expend such funds as may be necessary to implement and effect the terms and requirements established by this Bidding Procedures order.

8.      The advance in the amount of $50,000.00 for marketing expenses (the "Advance"), as contemplated in the Sale Motion, is approved.  VM shall make the Advance directly to the Auctioneer pursuant to wire or other payment instructions as the Auctioneer may direct.  The Advance shall be treated as part of VM's allowed secured claim, is in an amount that is "reasonable" within the meaning of Section 506(b) of the Bankruptcy Code, and shall be included an amount VM may credit bid at the Auction.

9.      The Debtor and Peter Loftin, on behalf of himself and any entity he directly or indirectly owns or controls except for the Debtor (Mr. Loftin and any such entities, collectively, "Loftin"), stipulate and agree that VM owns and holds a loan (the "Loan") in principal amount of $25,000,000, plus interest, costs, charges, expenses, fees and other amounts, in the total amount of $32,707,426.13 as of July 1, 2013 (the "Indebtedness").  The Debtor and Loftin stipulate and agree that the Loan and the Indebtedness are legal, valid and binding obligations of the Debtor, without objection, defense, counterclaim or offset of any kind; the liens and security interests granted to secure the Loan and the Indebtedness are valid, binding, perfected, enforceable, first priority (except for liens securing real and personal property taxes assessed against the Property) liens and security interests in the Property, and are not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination, of any kind, pursuant to the Bankruptcy Code or applicable nonbankruptcy law by any entity.  The Debtor and Loftin do not have, and hereby waive, any claims, counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against VM and its affiliates, subsidiaries, agents, officers, directors, employees, predecessors, attorneys and advisors in respect of the Loan or the Indebtedness;

provided, however, that Loftin may raise any matter waived herein as a defense to Count IV in the civil action pending in the United States District Court for the Southern District of Florida, styled *VM South Beach, LLC v. Casa Casuarina, LLC, et al.*, No. 11-24612-CIV-ROSENBAUM (the "District Court Action"), up to and including the amount of any money damages to which VM may otherwise be entitled in the District Court Action.

10.    Notwithstanding the foregoing paragraph 9,

(a.)    any party in interest, including the Debtor but excluding Loftin, may object to VM's proof of claim in accordance with the procedures in paragraph 6; provided, however, that such objection must be filed on or before the Objection Deadline and failure to object timely waives any such objection; and

(b.)    in the event that Herbert Stettin, as Chapter 11 trustee in In re Rothstein Rosenfeld Adler, P.A., No. 09-34791-RBR, or his successor (the "Trustee"), timely object to VM's proof of claim in accordance with the procedures in paragraph 6, no stipulation or waiver of the Debtor or Loftin in the foregoing paragraph 9 shall affect, alter or otherwise impair the claims or defenses of the Trustee as against VM.

11.    In the interests of judicial economy and to facilitate the sale process, VM and Mr. Loftin agree to a further stay of the District Court Action, and shall file an appropriate stipulation with the District Court requesting such a stay.

12.    The Debtor will provide VM and the Trustee, and counsel for VM and the Trustee, with unrestricted access to the Auctioneer/Broker and the Cooperating Broker. The Auctioneer/Broker and the Cooperating Broker shall provide VM, the Trustee and their counsel all information they provide to the Debtor and its counsel.

13.     All creditors with allowed secured claims against the Property shall have a lien on the sale proceeds to the same extent, validity and priority that existed as of the Petition Date. Any secured creditor asserting a secured interest in the sale proceeds shall file a proof of claim in accordance with Paragraph 5 above.

###

Submitted by:

    Joe M. Grant, Esq.
    Marshall Socarras Grant P.L.
    197 S. Federal Highway, Suite 300
    Boca Raton, FL 33432

The party submitting this order shall serve a copy of the signed order on all interested parties and file with the court a certificate of service conforming with Local Rule 2002-1(F).

PURCHASE AND SALE AGREEMENT

BETWEEN

CASA CASUARINA LLC, AS CHAPTER 11 DEBTOR IN POSSESSION

as Seller

AND


as Buyer

_____

Property: 1116 Ocean Drive, Miami Beach, FL

Dated as of:            , 2013

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated _____2013 between CASA CASUARINA LLC, as debtor in possession (the "Debtor" or "Seller") and_____ (the "Buyer") recites and provides:

## RECITALS

The Debtor is the owner of the real and personal property located at 1116 Ocean Drive, Miami Beach, FL which real property is described on Exhibit A hereto, together with all improvements thereon and appurtenances thereunto (the "Property").

A voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") was filed by the Debtor in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") on July 3, 2013. The case is pending in the Bankruptcy Court as Case No. 13-25645-LMI (the "Bankruptcy Case"). The bankruptcy estate of the Debtor is referred to herein as the "Estate."

The Debtor believes that it is in the best interests of the Estate to sell the Property (defined below) to the Buyer, and the Buyer wishes to purchase the Property from the Debtor, all subject to the approval of the Bankruptcy Court and as more particularly provided below.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows.

## AGREEMENT

1.      Court Approval. The parties' respective obligations to purchase and sell the Property pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing, subject to higher and better offers, and the provisions, requirements and limitations of the Sale Order (defined below).

2.      Sale and Purchase of Property. Subject to the terms and conditions of this Agreement and the Sale Order, and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed and delivered to Buyer, and Buyer shall purchase and acquire from Seller, Seller's right, title and interest in the following (collectively, the "Property"):

2.1.    The Real Property described in Exhibit A; located at 1116 Ocean Drive, Miami Beach, Florida.

2.2.    All personal property located within the Property, other than any property specifically excluded herein;

3.      Conveyance of Property.

3.1.    Subject to and in accordance with the provisions of this Agreement and the Sale Order, and subject to approval of the Bankruptcy Court, the Seller shall execute and deliver to the Buyer on the Closing Date the following instruments pursuant to which the Seller shall sell, assign, transfer, convey and deliver the Property to the Buyer free and clear of all Liens in accordance with sections 363(b) and (f) of the Bankruptcy Code, with such Liens to attach to the proceeds of sale, on an AS-IS, WHERE-IS BASIS, WITHOUT REPRESENTATIONS OR WARRANTIES:

3.2.    The Debtor's Quitclaim Deed (the "Deed") conveying the Real Property to Buyer, which shall be free and clear of any and all encumbrances and restrictions in accordance with section 363(f) of the Bankruptcy Code, except that the Seller shall convey marketable title subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; and real and personal property taxes for year of Closing and subsequent years; provided, that there exists at Closing no violation of the foregoing and nothing preventing use of the Property for residential or commercial purposes.

4.    <u>Reserved</u>.

5.    <u>Deposit</u>

5.1.    Within 24 hours of becoming the Successful Bidder, Buyer shall deposit an additional sum (the "Additional Deposit"), such that the sum of the $3,000,000.00 escrow deposit and the Additional Deposit together shall equal 10% of the Successful Bid.   (Collectively, the $3,000,000.00 escrow deposit together with the Additional Deposit shall be referred to hereafter as the "Deposit"). The Deposit will be wired to Seller's Counsel, Marshall Socarras Grant, P.L to be held in the escrow account of Marshall Socarras Grant, P.L (the "Deposit Agent"). The Deposit shall be held without interest and shall be applied against the Purchase Price at Closing. If the Closing fails to occur because this Agreement is not approved by the Bankruptcy Court the Deposit shall be returned to Buyer, however if the closing fails to occur as the result of Buyer's unexcused failure to perform its obligations, then the entire Deposit shall retained by the Seller as liquidated damages.

5.2.    If all of the contingencies set forth in Section 10 are satisfied or waived in writing by Buyer, and Seller then fails, after the entry of the Sale Order, to close on the sale of the Property to Buyer as required by this Agreement, Buyer shall be entitled to a refund of the Deposit, as its sole and exclusive remedy and as liquidated damages for Seller's failure to close.

6.    <u>Purchase Price</u>. The purchase price for the Property shall be $_____, which does not include the Buyer's 4% Premium. At the Closing, Buyer shall, as additional consideration, pay to the Seller the closing costs which shall be allocated as set forth in Section 12, as well as the Buyer's Premium, as set forth in

Section 18. (the total amount to be paid at closing shall be referred to hereafter as the "Purchase Price")

7.    Bankruptcy Court Approval, Competing Transactions and no Due Diligence Period.

7.1.    Seller shall use commercially reasonable efforts to obtain Bankruptcy Court approval of the sale of the Property to the Buyer pursuant to this Agreement (the "Sale Order"), which shall contain the following provisions:

(a)    a finding that Seller prepared and mailed a motion seeking the Sale Order, and such motion and notice were proper and sufficient as to all parties entitled to same;

(b)    the sale and transfer of the Property to the Buyer is approved pursuant to Sections 105 and 363(f) of the Bankruptcy Code;

(c)    the sale of the Property to Buyer pursuant to this Agreement will be free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens, attaching to the sale proceeds; however Seller shall convey marketable title subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; and real and personal property taxes for year of Closing and subsequent years; provided, that there exists at Closing no violation of the foregoing and nothing preventing use of the Property for residential or commercial purposes.

8.    Competing Transactions. This Agreement is subject to approval by the Bankruptcy Court and the consideration by the Seller of higher or better competing bids other than from the Buyer pursuant to auction procedures approved by the Bankruptcy Court (each a "Competing Bid"). From the date hereof (and any prior time) and until the completion of the auction contemplated hereby or as otherwise directed by the Bankruptcy Court, Seller is permitted to cause his respective representatives to initiate contact with, solicit or encourage submission of any inquiries proposals or offers by, any person (in addition to the Buyer and its Affiliates, agents and representatives) in connection with any sale or other disposition of the Property. In addition, the Seller shall have the responsibility and obligation to respond to any inquiries or offers to purchase all or any part of the Property and perform any and all other acts related thereto which are required under the Bankruptcy Code or other applicable law, including supplying information relating to the Property to prospective buyers. If a Competing Bid is approved by the Bankruptcy Court, this Agreement will nevertheless survive and remain in effect during the period specified in the Order approving the Bid Procedures Motion and shall serve as a stand-by bid as contemplated in such Order.

9.    No Due Diligence Period. There shall be no due diligence period following execution of this Agreement.

10.    Conditions to Obligations of Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before Closing of each and every one of the following conditions, which may be waived in whole or in part by Buyer:

10.1.    the Sale Order shall have been entered by the Bankruptcy Court, and the Sale Order shall contain findings set forth in Section 7.1(a) above; and

10.2.    the representations and warranties of Seller shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such date, and Seller shall not be in default in any material respect under the provisions of this Agreement.

10.3.    If any of the foregoing conditions is not substantially satisfied by Seller or waived by Buyer before or at the Closing, Buyer may terminate this Agreement and Seller shall forthwith return the Deposit to the Buyer, and neither Party shall have any further obligations to the other.

11.    Conditions to Obligations of Seller. The obligations of the Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or before the Closing of the following conditions, which may be waived in whole or in part, by the Seller:

11.1.    the Sale Order shall have been entered by the Bankruptcy Court;

11.2.    the representations and warranties of Buyer shall be true in all material respects on and as of the Closing Date, with the same effect as though made on and as of such date, and Buyer shall not be in default in any material respect under the provisions of this Agreement; and

11.3.    Buyer shall have paid to the Seller the Purchase Price.

12.    Closing.

12.1.    Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transactions contemplated by this Agreement (the "Closing") shall take place within 5 calendar days after the entry of the Sale Order (the "Closing Date").

12.2.    Closing shall be conducted through Marshall Socarras Grant, P.L. Closing shall take place at the offices of Marshall Socarras Grant, P.L., 197 S. Federal Highway, Suite 300 Boca Raton, FL 33432 (or such other place as the parties may designate in writing). Buyer shall wire the full amount of the Purchase Price less any prior deposits into the trust account of Marshall Socarras Grant, P.L. whereupon title will be delivered to the Buyer.

12.3.    At the Closing, Seller shall deliver to the Buyer the transfer instrument provided for in Section 3.

12.4.    At the Closing, Buyer shall deliver to the Seller the Purchase Price as provided in Section 6.

12.5.    The cost of providing title evidence covering the period prior to closing, state documentary stamps which are required to be affixed to the instrument of conveyance, any surtax costs, and the cost of recording any corrective documents shall be paid by Buyer. The cost of recording the deed and the cost of the issuance of the Title Insurance Policy shall be paid by Buyer. Each party shall pay its own attorney's and accounting fees.

12.6.    Buyer shall pay, on the Closing Date, the cost of recording the deed and the cost of the issuance of the title insurance policy premium for any owner's title insurance policy (and any loan policy) obtained by Buyer, the cost of all title updates, title examination, and lien searches, and the cost of any inspections and/or surveys, any settlement fees charged by the Person conducting the Closing, and all other costs and charges of Closing. Each Party shall pay its own attorneys' fees.

13.    Prorations. Real and personal property taxes and assessments for the tax year in which the Closing occurs, and all utility bills shall be apportioned between Buyer and Seller as of the Closing Date. The provisions of this Section 13 shall survive the Closing.

14.    Representations and Warranties of Seller. Seller represents and warrants to Buyer that Seller is the Chapter 11 debtor in possession and that, subject to the entry of the Sale Order without any contrary order being obtained by any party in interest, Seller has the power to convey the Property to Buyer pursuant to this Agreement subject to Bankruptcy Court approval and in accordance with the provisions of the Sale Order approved by the Bankruptcy Court.

15.    Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller, which representations and warranties shall survive Closing, as follows:

15.1.    This Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

15.2.    Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will result in a violation by Buyer of any federal, state, local or other law or governmental requirement of any kind, and any rules, regulations, permits, licenses and orders promulgated thereunder.

15.3.    BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE PROPERTY IS SO ASSIGNED, LEASED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR

PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

      16.    <u>Default and Remedies</u>.

      16.1.    If the Closing fails to occur because of a default, misrepresentation or breach of warranty by Buyer, Seller shall be entitled to retain the Deposit as Seller's sole remedy at law or in equity for Buyer's failure to close on the purchase of the Property. In any such event, Buyer shall continue to be liable under any provisions of this Agreement that expressly survive the termination of this Agreement.

      16.2.    If the Closing fails to occur solely because of a default by Seller under the provisions of this Agreement, the Sale Order or any other order of the Bankruptcy Court applicable to the sale of the Property hereunder, then Buyer may, as its exclusive remedy, receive a return of its Deposit and terminate this Agreement by notice to Seller.

      17.    <u>Risk of Loss</u>. Risk of loss to the Real Property or any part thereof from damage or destruction by fire or other casualty or by reason of condemnation shall remain upon the Seller until the Closing.

      18.    <u>Buyer's Payment of Buyer's Premium and No Claims of Brokers</u>. The commissions earned by Jill Hertzberg and Jill Eber (the "Jills") and Lamar Fisher and Fisher Auction Company (the "Auctioneer") shall be paid by the Buyer at Closing along with the sale proceeds and shall be in the form of a 4% "Buyer's Premium. The Buyer's Premium is paid by the buyer in addition to the Successful Bid amount and is incorporated in the Purchase Price. Seller shall not be responsible for any broker's commissions. Buyer shall indemnify and hold the Seller harmless from the claims of any other broker or finder claiming through the Buyer. The provisions of this Section shall survive the Closing and any termination of this Agreement

      18.1.    The 4% Buyers Premium shall be allocated as set forth in subsections 18.2 - 18.6

      18.2.    Fisher Auction Company shall receive 1.5% of the final bid price

      18.3.    the Jills shall receive 1.5% of the final bid price

      18.4.    a procuring cause broker shall receive 1% of the final bid price

      18.5.    Should the property be purchased without a procuring cause broker and/or the Jills become the procuring cause broker, the Jills will receive an additional .5% of the final bid price and Fisher Auction Company shall receive an additional .5% of the final bid price.

      18.6.    If the property is purchased by credit bid, either in whole or in part, then the Buyer's Premium shall be:

       (a)      For a purchase wholly by credit bid, other than any amount of cash or equivalent escrowed to pay off asserted senior liens 2% of Successful Bid amount; or

       (b)      for a sale to a secured creditor for greater than the value of the secured creditor's secured claim, 2% of the amount credit bid plus 4% of the amount by which the Successful Bid exceeds the value of the secured creditor's secured claim, excluding any amount of cash or equivalent escrowed to pay off asserted senior liens.

       19.     <u>Deposit Agent Provisions</u>.

       19.1.   If conflicting demands relating to this Agreement are made upon the Deposit Agent, the parties hereto expressly agree that the Deposit Agent shall have the absolute right to do either or both of the following: (i) withhold and stop all actions in performance of this escrow and await settlement of the controversy by final appropriate legal proceedings or as otherwise mutually directed in writing by Buyer and Seller; or (ii) file suit in declaratory relief or interpleader and obtain an order from the Bankruptcy Court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the parties under this Agreement, the Deposit Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

       19.2.   In no event shall Deposit Agent be liable for any act or omission under or in respect of this Agreement except where Deposit Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Deposit Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Deposit Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Deposit Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

       19.3.   Seller acknowledges that Deposit Agent also serves as Seller's legal counsel in connection with this Agreement, and both Seller and Buyer consent to Deposit Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Deposit Agent shall be entitled to resign as Deposit Agent and to represent Seller in such dispute or adversity, and in such case shall deliver any funds held by Deposit Agent pursuant to this Agreement the Funds either to a successor escrow agent designated by Seller and Buyer as provided above, or to a court of competent jurisdiction as provided for above.

       20.     <u>Definitions; Rules of Construction</u>.

20.1.    The following terms have the following meanings in this Agreement:

(a)    "Legal Costs" means court costs and attorneys' fees and costs, including the costs of paralegals, whether or not any mediation, arbitration or legal proceeding is filed, or if any mediation, arbitration or legal proceeding is filed, then all such costs incurred at any point in such mediation, arbitration or legal proceeding, including trial and all levels of appeal.

(b)    "Lien" means "any interest in" the Property as used in Section 363(f) of the Bankruptcy Code and includes any lien (including any tax lien or judgment lien), pledge, security interest, mortgage or lis pendens, contracts, options or other rights to acquire any condominium units or any other interest in the Property, but does not include any easements or restrictions of record.

(c)    "Party" or "Parties" mean the Seller and/or Buyer, as the context may indicate.

(d)    "Person" means any individual or any corporation, partnership, joint venture, association, limited liability company, trust, unincorporated organization or other legal entity or a government or governmental entity.

20.2.    As used in this Agreement: (i) words in the singular shall be held to include the plural and vice versa, (ii) words of one gender shall be held to include the other genders as the context requires, (iii) the terms "hereof", "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement and not to any particular provision of this Agreement, (iv) references to Section, paragraph, Exhibit and Schedule are references to the Sections, paragraphs, Exhibits and Schedules of this Agreement, unless otherwise specified, (v) section headings in this Agreement are solely for convenience of reference, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement, (vi) the word "including" and words of similar import when used in this Agreement, shall mean "including, without limitation," unless otherwise specified, and (vii) the word "or" shall not be exclusive.

20.3.    Any terms not defined in this agreement shall have the meaning as defined in:

(a)    The Debtor's Motion to sell the Property filed with the Bankruptcy Court on _____; or

(b)    11 U.S.C. § 101.

20.4.    Each Party and its counsel have reviewed and revised this Agreement. The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or of any amendments or exhibits to this Agreement.

21.    <u>Miscellaneous</u>.

21.1.    This Agreement and the Schedules to this Agreement may not be amended except by an instrument in writing signed on behalf of each Party.

21.2.    This Agreement, together with the Schedules and other agreements referred to in this Agreement, constitute the entire agreement between the Parties pertaining to the subject matter of this Agreement and supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the Parties regarding such subject matter.

21.3.    All notices and other communications under this Agreement shall be in writing and shall deemed given if delivered personally or mailed by registered or certified mail, postage prepaid, return receipt requested (such mailed notice to be effective on the date such receipt is acknowledged) or delivered by an recognized overnight delivery system (such overnight notice to be effective on the date of receipt) as follows:

21.4.    Only Executory Contracts identified by Buyer to the Seller in writing (1) business day prior to the Auction may be assumed by Seller and assigned to the Buyer. The seller may assume and assign the contracts subsequent to the sale hearing by separate motion seeking the Courts approval of the assumption and assignment of Designated Contracts to the Successful Bidder.

21.5.    <u>Notices</u>. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed, postage prepaid, certified mail, return receipt requested or by overnight express mail (i.e. Federal Express) as follows:

If to Buyer, addressed to:

With a copy to:

If to Seller, addressed to:


Marshall Socarras Grant, P.L.
197 South Federal Highway, Suite 300Boca Raton, FL 33432


or to such other place and with such other copies as either Party may designate as to itself by written notice to the others.

21.6.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original. Regardless of whether the transactions contemplated by this Agreement are consummated, each Party shall pay its or their own costs and expenses, including Legal Costs and investment banking, accounting, consulting, and other professional fees, incurred in connection with the negotiation, preparation, investigation and performance by such Party of this Agreement and the transactions contemplated under this Agreement.

21.7.    Time is of the essence with respect to each Party's obligations hereunder.

21.8.    This Agreement shall not be recorded by Buyer and, if recorded by Buyer, Seller may immediately terminate all of its obligations under this Agreement, and Buyer shall pay Seller's Legal Costs in removing this Agreement of record. The provisions of this Section 25 shall survive the Closing.

21.9.    If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Miami, Florida are open for business, but in no case will the extension be for more than three days. For purposes of this Agreement, "business day" shall mean any day other than a Saturday, a Sunday, or any other day on which banking institutions in Miami, Florida, are closed or are authorized to be closed, including all legal holidays.

21.10.  Notwithstanding any other provision of this Agreement, any representation, warranty or covenant of Seller contained in this Agreement that by its terms survives Closing or the termination of this Agreement, shall not survive the closing of the Bankruptcy Case.

21.11.  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines

have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from county public health units.

21.12. The determination that any covenant, agreement, condition or provision of this Agreement, which is not necessary to the enjoyment by either party of the benefit contemplated herein, is invalid shall not affect the enforceability of the remaining covenants, agreements, conditions or provisions hereof and, in the event of any such determination, this Agreement shall be construed as if such invalid covenant, agreement, condition or provision were not included herein.

21.13. No failure or delay of either Party in the exercise of any right given to such Party hereunder shall constitute a waiver thereof unless the time specified herein for exercise of such right has expired, nor shall any single or partial exercise of any right preclude any other or further exercise thereof or of any other right. The waiver of any breach hereunder shall not be deemed to be a waiver of any other or any subsequent breach hereof.

21.14. The rights and obligations of Buyer hereunder may be assigned to one or more affiliated entities without the consent of Seller, and to any unaffiliated third party with the prior written consent of Seller. No assignment under this provision shall relieve Buyer of liability to Seller for amounts accruing under this Agreement. This Agreement shall be binding upon, and shall inure to the benefit of, the successors and permitted assigns of the parties hereto. The Parties neither intend to confer any benefit hereunder on any Person other than the parties hereto, or shall any such third party have any rights hereunder.

21.15. This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida without reference to its choice or conflicts of laws principles. Each Party: (i) irrevocably submits to the jurisdiction of the Bankruptcy Court; (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party; and (iv) agrees that service of process upon such Party in any such action or proceeding shall be effective if given in accordance with the notice provisions of this Agreement.

21.16. BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

WITNESS the following signatures as of the date in the preamble.


BUYER:


_____


SELLER:


_____

Casa Casuarina, LLC
By: Peter Loftin, Managing Member

EXHIBIT A

LEGAL DESCRIPTION

Property Described in the land records of Miami-Dade County, Florida as:

```
Lots 5, 6 and 7, in Block 16, of OCEAN BEACH ADDITION NO. 2,
according to the Plat thereof,: as recorded in Plat Book 2, at
Page(s) 56, of the Public Records of Miami-Dade County, Florida.
```

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

CASA CASUARINA, LLC.,                              Case No. 13-25645-LMI

                                                   Chapter 11

_____Debtor._____/

**NOTICE OF PROPOSED AUCTION SALE OF THE DEBTOR'S**
**REAL AND PERSONAL PROPERTY LOCATED AT 1116 OCEAN DRIVE,**
**MIAMI BEACH, FL**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.       On July 1, 2013, Casa Casuarina LLC (the "Debtor") filed a voluntary

petition for relief under Chapter 11 of the United States Bankruptcy Code.

2.       On July 8, 2013, the Debtor filed motion for the entry of an Order (1)

authorizing the Debtor to schedule an auction sale of the Debtor's real and personal

property, (2) approving bidding procedures in connection with auction sale, (3) approving

form and manner of notice of sale, (4) scheduling a sale hearing to approve sale, (5)

approving the advance of costs for marketing and (6) approving the sale of the Debtor's

interest in the real and personal property free and clear of liens, claims, and

encumbrances (the "Sale Motion"). Pursuant to the Sale Motion, the Debtor seeks to sell

the Debtor's interest in 1116 Ocean Drive, Miami Beach FL (the "Property").

3.       The sale of the Property will be an auction, with or without a Stalking

Horse bidder, and will be subject to higher and better offers and Bankruptcy Court

approval. This notice sets forth the procedures (1) for qualifying to bid for the Property

and (2) to participate in the auction of the Property.

4.      A hearing on that portion of the Sale Motion dealing with the Bidding Procedures was held before the Bankruptcy Court on _____, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures set forth in the sale motion (the "Bid Procedures Order").

5.      A copy of the Bid Procedures Order is attached hereto as Exhibit 1. The Bid Procedures Order establishes the bidding procedures that govern the participation requirements and manner in which the Property is to be sold.

6.      Below for convenience is a disclosure of relevant bid procedures from the order. Parties should consult the attached Order for a complete disclosure of the bidding procedures.

7.      The Sale Hearing is currently scheduled to be conducted on _____ at the United States Bankruptcy Court for the Southern District of Florida, 51 S.W. 1st Ave., Room 1409, Miami, FL 33130 before the Honorable Laurel M. Isicoff, United States Bankruptcy Judge, to consider the approval of the sale to the Successful Bidder (as defined in the Sale Motion). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

8.      The failure of any person or entity to file an Objection on or before the Objection Deadline shall be deemed a consent to the sale transaction contemplating the sale of the Property to the Purchaser and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bid Procedures, the Sale Motion, the auction, or the sale of the Property.

9.      This Notice is subject to the full terms and conditions of the Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict. The Debtor encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice in connection therewith.

10.     Potential bidders that have met participation requirements may visit the property through prior arrangement with the Auctioneer. The Auctioneer shall have set days for visitation coordinated with the Debtor.

11.     For further information about the auction sale, please contact the Debtor's Auctioneer at:

**Lamar P. Fisher**
Fisher Auction Co., Inc.
2112 East Atlantic Boulevard
Pompano Beach, Florida 33062
954.942.0917
800.331.6620

Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
Attorneys for the Debtor in Possession
197 South Federal Highway, Suite 300
Boca Raton, Florida 33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email: jgrant@msglaw.com

By: /s/ Joe M. Grant
        JOE M. GRANT
        ADAM D. MARSHALL
        LAWRENCE E. PECAN