

ORDERED in the Southern District of Florida on July 25, 2013.

Laurel M. Isicoff, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

CASA CASUARINA, LLC.,                              Case No. 13-25645-LMI

      Debtor.
_____/                   Chapter 11

**AMENDED[1] ORDER GRANTING DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO SCHEDULE AN AUCTION SALE OF DEBTOR'S PROPERTY; (2) APPROVING BIDDING PROCEDURES AND INITIAL STALKING HORSE BID IN CONNECTION WITH AUCTION SALE; (3) APPROVING FORM AND MANNER OF NOTICE OF AUCTION SALE; (4) SCHEDULING A SALE HEARING TO APPROVE SALE; (5) APPROVING THE ADVANCE OF COSTS FOR MARKETING AS A FUTURE ADVANCE BY VM SOUTH BEACH, LLC; AND (6) APPROVING THE SALE OF THE DEBTOR'S**

---

[1] Amended to include additional negotiated language to paragraph 2(m) and striking paragraph 13.

**INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, WITH LIENS TO ATTACH TO PROCEEDS**

THIS MATTER, came before the Court for hearing on Tuesday, July 16, 2013 upon Casa Casuarina, LLC's (the "Debtor") motion for the entry of an Order (1) authorizing the Debtor to schedule an auction sale of the Debtor's real and personal property, (2) approving bidding procedures in connection with auction sale, (3) approving form and manner of notice of sale, (4) scheduling a sale hearing to approve sale, (5) approving the advance of costs for marketing, and (6) approving the sale of the Debtor's interest in the real and personal property free and clear of liens, claims, and encumbrances [D.E. 27] (the "Sale Motion").  The Court, having reviewed the Sale Motion, heard the modifications to the relief requested in the Sale Motion negotiated by parties in interest as stated on the record in open court, and determined that the relief requested in the Motion with such modifications is in the best interests of Casa Casuarina, LLC, as debtor and debtor in possession (the "Debtor"), its estate, the creditors and all other parties-in-interest, it is hereby FOUND AND DETERMINED THAT:

A.   This Court has jurisdiction over this matter and over property of the Debtor pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper in this district pursuant to 28 U.S.C. § 1408;

B.   This is a core proceeding pursuant to 28 U.S.C. § 157(b);

C.   Good and sufficient notice of the relief sought in the Motion has been given in accordance with Bankruptcy Rule 2002 and 6004, and no other or further notice shall be required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties-in-interest.  A response was filed by the Miami-Dade County Tax Collector, and the concerns raised in this response are addressed herein;

2

D.  The Bid Procedures (defined below) and proposed Sale Notice (defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof;

E.  The Bid Procedures and initial stalking horse bid as set forth herein are fair, reasonable, and appropriate and are designed to maximize the sale price of the Debtor's real property;

F.  The proposed marketing efforts and bidding process as described in the Motion are fair and reasonable, and designed to fully expose the Debtor's assets to the market, and the advance of such marketing expenses by VM South Beach, LLC ("VM") as a future advance secured by the lien of its pre-petition mortgage is reasonable and made in good faith; and

G.  The entry of this Order is in the best interests of the Debtor, its estate, creditors, and all other parties-in-interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.  The Sale Motion is GRANTED as provided in this Order, pending a final sale hearing (the "Sale Hearing") and entry of a sale order (the "Sale Order") approving the sale of the Debtor's real and personal property, as defined in the Sale Motion and exhibits attached thereto (the "Property").  The Court shall conduct the Sale Hearing on September 18, 2013, 2:00 p.m. (the "Sale Hearing Date"), at the United States Bankruptcy Court, 51 SW 1st Ave., Room 1409, Miami, Florida 33130.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Sale Hearing.  The Sale Hearing shall be an evidentiary hearing on all matters related to the Sale Motion.

2. The Debtor shall conduct an auction sale (the "Auction") of the Property on the date that is one day before the Sale Hearing Date, at 10:00 a.m. (the "Auction Date"), pursuant to the terms and conditions of the following bid procedures (the "Bid Procedures"), which are approved in their entirety:

(a.) **Marketing Plan**: The Debtor, by separate application [D.E. 14], is seeking to retain the services of the Lamar P. Fisher and Fisher Auction Company (the "Auctioneer") as well as Jill Hertzberg, Jill Eber and Coldwell Banker Residential Real Estate (the "Cooperating Broker"), and to implement an extensive Marketing Plan to advertise the sale of the Property and to conduct the auction sale thereof (the "Marketing Plan").

(b.) **Participation Requirements**: Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must,

(i.) No later than 5:00 p.m. on the date that is three business days before the Auction Date (the "Bid Deadline"):

(x.) wire into the trust account of Marshall Socarras Grant, P.L., an escrow deposit of $3,000,000.00; and

(y.) submit to Marshall Socarras Grant, P.L., Attn. Joe M. Grant, Esq., proof of available funds or a financing commitment, at a financial institution located within the United States and otherwise in form and content satisfactory to the Debtor, of a minimum of $40,000,000.

(z.) Any party that complies with this subsection shall be deemed a "Qualified Bidder."

(ii.) Any secured creditor holding a lien against the Property shall automatically be deemed a Qualified Bidder and shall not be required to comply with subsection (a) above. For avoidance of doubt, VM is deemed to be a Qualified Bidder.

(c.) **Stalking Horse Bid**:  The initial bid for the purchase of the Property shall be VM's stalking horse bid in the amount of $25,000,000, comprised of cash in the amount of $646,133.74 for the payment of senior secured tax claims and of a credit bid in the amount of $24,353,866.26 (the "Stalking Horse Bid").  No break-up fee is being sought in connection with the Stalking Horse Bid.  **The Stalking Horse Bid is only an initial bid, and is without prejudice to VM making additional or further bids, which may be cash bids, credit bids or combinations of both, in accordance with the terms of this Order.**  VM estimates the total amount of its credit bid will be $32,707,426.13, plus (i) interest, fees, costs, and charges accruing after July 1, 2013, (ii) $50,000 advanced for marketing expenses pursuant to this Order, and (iii) amounts advanced for insurance, security and fire-repair expenses made pursuant to this Court's *Order Approving Withdrawal of VM South Beach, LLC's Emergency Motion for the Appointment of a Chapter 11 Trustee and Granting Related Relief*.  In the event that there are Qualified Bidders in addition to VM, then no later than 5:00 p.m. on the date that is one business day before the Auction, VM shall file a notice with the Court of the updated amount of its total credit bid, as may have been adjusted by the Court pursuant to paragraph 6 below.

(d.) **Participation in Auction**:  Provided that there are Qualified Bidders in addition to VM, the Debtor, by and through the Auctioneer, will conduct the Auction on the Auction Date at the Property, which is located at 1116 Ocean Drive, Miami Beach, FL 33139.  If VM is the only Qualified Bidder, the Auction will be deemed to have occurred, and the Debtor shall submit VM's Stalking Horse Bid to the Court for final approval at the Sale Hearing.

(e.) **Auction Procedures**:  At the Auction, the minimum initial overbid shall be the sum of the Stalking Horse Bid and $500,000.  Subsequent bids shall be in increments of $500,000.00; provided, however, that at any time in the course of the Auction, the Auctioneer may reduce the incremental bidding to an amount not less than $250,000.00.  Bidding at the Auction shall continue until such time as the Auctioneer, in the exercise of his business judgment, determines that the highest and best bid (the "Successful Bid") has been submitted by a Qualified Bidder (the "Successful Bidder").  The Auctioneer reserves the right to announce at the Auction additional procedural rules for conducting the Auction in the exercise of its business judgment, so long as such rules are not inconsistent with the terms of this Order.

(f.) **Successful Bid**:  After the conclusion of the Auction, the Successful Bidder and Back Up Bidder (as defined below) shall fully execute an asset purchase agreement substantially in the form attached hereto as Exhibit "A" (the "Purchase

Agreement"), which may be modified hereafter, but shall include a purchase price (specifying any amount to be credit bid), shall be subject to approval by this Court, and shall have no due diligence or financing contingencies.  The Debtor shall submit the Successful Bid for approval to the Bankruptcy Court at the Sale Hearing.  At the Sale Hearing, the Debtor intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Debtor to consummate the Back Up Bid immediately (within five days) after a default under the Successful Bid, without further order of the Court.  Promptly following the conclusion of the Sale Hearing, the Debtor shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder).

(g.) **Deposit**.  Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall deposit an additional sum (the "Additional Deposit"), such that the sum of the $3,000,000.00 escrow deposit and the Additional Deposit together shall equal 10% of the Successful Bid. (Collectively, the $3,000,000.00 escrow deposit together with the Additional Deposit shall be referred to hereafter as the "Deposit").  The Deposit will be wired to Marshall Socarras Grant, P.L. to be held in the escrow account of Marshall Socarras Grant, P.L. (the "Deposit Agent").  The Deposit shall be held without interest and shall be applied against the Purchase Price at Closing.  Notwithstanding anything to the contrary in this paragraph, the Deposit and Additional Deposit shall be calculated without including the amount of any credit bid in the Successful Bid.

(h.) **Post Auction Proof of Funds**.  Within 24 hours of becoming the Successful Bidder, the Successful Bidder shall provide to Marshall Socarras Grant, P.L., proof of funds or financing commitment for the Purchase Price (less the amount of any credit bid).

(i.) **Closing**:  Closing shall take place five days after the entry of the Sale Order.  The Debtor shall request that the Sale Order be immediately effective; that any stay imposed by Fed.R.Bankr.P. 6004, or any similar provisions of the Bankruptcy Rules, is waived; and that closing shall occur notwithstanding the filing of any notice of appeal, motion for reconsideration or rehearing, or request for similar relief, unless a stay is obtained from a court of competent jurisdiction.  The Successful Bidder must be prepared and must in fact consummate the purchase of the Property in accordance with the Purchase Agreement.  Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Property because of a breach or failure on the part of the Successful Bidder, then the Debtor may (within five days) elect in its business judgment to close the

transaction with the Back Up Bidder. If the Successful Bidder fails to close due to a breach or failure on the part of the Successful Bidder, the Debtor shall retain the Deposit as liquidated damages. The ultimate purchaser, upon closing, whether the Successful Bidder or the Back Up Bidder, shall be referred to herein as the "Purchaser." The Undisputed Portion (defined below) of any secured claim against the Property shall be paid in full at closing

(j.) **As Is Where Is**: The Property will be sold in its "As Is", "Where Is" condition and with all faults, with no guarantees or warranties express or implied.

(k.) **No Conditions or Contingencies**: The Property will be sold without any financing or other conditions, other than marketable title.

(l.) **Credit Bid**: Any Qualified Bidder holding a secured claim against the Property shall be entitled to credit bid the full amount of the claim,[2] or such amount as is (i) agreed to between the Debtor and the secured creditor, or (ii) ordered by the Court (the "Credit Bidder"), whether or not the claim is disputed, provided that if (a) the Credit Bidder is ultimately the Purchaser, and (b) such claim is subsequently disallowed (in whole or in part), the Purchaser shall repay to the Debtor's estate the amount by which the credit bid exceeds the allowed amount of the secured claim. In order to credit bid, the Credit Bidder must escrow with the Debtor's attorneys, funds (in cash or its equivalent) sufficient to satisfy any real and personal property tax liens asserted to be senior to the Credit Bidder's lien. To the extent any dispute exists as to the extent, validity and/or priority of the tax liens, the undisputed portion shall be paid at Closing, and the disputed portion will remain in escrow pending a determination by the Court of the disputed portion of the liens.

(m.) **Sale Free and Clear of Liens, Claims and Conditions**: The Property will be sold free and clear of all liens, claims and encumbrances, with all such liens, claims and encumbrances to attach to the sale proceeds of the sale in the same validity and priority as they existed as of the Petition Date, but subject to: comprehensive land use plans, zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; unplatted public utility easements of record; and real and personal property taxes for year of Closing and

---

[2] Including any amounts advanced pursuant to applicable non-bankruptcy law, any amounts advanced pursuant to an order of this Court, or any amounts deemed part of an allowed secured claim.

subsequent years; provided, that there exists at Closing no violation of the foregoing and nothing preventing use of the Property for residential or commercial purposes.

(n.) **Real Estate Commissions**: The Auctioneer, Cooperating Broker, and the buyer's duly registered broker, are the only parties that shall be entitled to a commission in connection with this transaction, to which they shall be entitled only upon closing. The Auctioneer and Cooperating Broker will each be entitled to a commission of not more than 2% of the purchase price, which is included the buyer's premium, as set forth in their retention application. The buyer's registered broker will be entitled to a commission of 1% of the purchase price, which is included in the buyer's premium. The Purchaser shall indemnify and hold the estate harmless for any other claimed real estate commissions. If the Property is sold by Credit Bid Alone,[3] then the sole commissions due as a buyer's premium shall be 1% to Cooperating Broker and 1% to the Auctioneer. Whether the sale is by cash sale or Credit Bid Alone, the Purchaser will be required to pay (at Closing) the buyer's premium, which shall be 4% for any cash sale; 2% for any sale by Credit Bid Alone; or, for a sale to a secured creditor for greater than the value of the secured creditor's secured claim, 2% of the amount credit bid plus 4% of the amount by which the Successful Bid exceeds the value of the secured creditor's secured claim, excluding any amount of cash or equivalent (i) escrowed to pay off asserted senior liens, or (ii) paid as a buyer's premium.

(o.) **Objections**: Objections, if any, to the Debtor's request for approval to sell the Property to the Successful Bidder or Back Up Bidder, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefor; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be electronically filed with the Court in this case no later than 6:00 pm on the day before the Sale Hearing Date. Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the Purchase Agreement.

3. The form of the Notice of Sale and Bidding Procedures, substantially in the form

---

[3] The term "Credit Bid Alone" shall refer to a Credit Bid whereby the entirety of the bid, other than any amount of cash or equivalent (i) escrowed to pay off asserted senior liens, or (ii) paid as a buyer's premium, is by credit bid.

attached as Exhibit "B" to the Sale Motion (the "Sale Notice"), complies with the Federal Rules of Bankruptcy Procedures, and the Sale Notice is hereby approved in all respects.

    4.    Service of the Sale Notice by first class US mail, postage prepaid, shall constitute good and sufficient notice of the Bid Procedures, the Auction, the Sale Hearing, and the remainder of the relief requested in the Motion, and any requirements for other or further notice shall be waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9007 and pursuant to this Court's powers under section 105 of the Bankruptcy Code.

    5.    No later than forty-five days prior to the Auction, any secured creditor holding a lien on the Property which is (a) scheduled as disputed, or (b) unscheduled, shall file a proof of claim.  This deadline shall apply only to the extent that a secured creditor seeks to credit bid or be paid at the closing of the sale, and shall have no bearing on the allowance or disallowance of the claim.

    6.    No later than thirty days prior to the Auction (the "Objection Deadline"), any party in interest may dispute the secured claim of any secured creditor for purposes of the auction sale.  Such a dispute ("the Dispute") may be by an objection to a proof of claim (for any party with standing to object to such a claim), or otherwise by a motion filed with the Court. Any Dispute shall set forth the name of the secured claim or lien being disputed (the "Disputed Claim"), the portion of the Disputed Claim which is disputed, and the basis for the dispute.  For purposes of distribution of funds at closing, the amount of the Disputed Claim which is undisputed, if any, shall be referred to as the "Undisputed Portion."

7. The Debtor is hereby authorized and empowered to take such actions, expend such funds as may be necessary to implement and effect the terms and requirements established by this Bidding Procedures order.

8. The advance in the amount of $50,000.00 for marketing expenses (the "Advance"), as contemplated in the Sale Motion, is approved. VM shall make the Advance directly to the Auctioneer pursuant to wire or other payment instructions as the Auctioneer may direct. The Advance shall be treated as part of VM's allowed secured claim, is in an amount that is "reasonable" within the meaning of Section 506(b) of the Bankruptcy Code, and shall be included an amount VM may credit bid at the Auction.

9. The Debtor and Peter Loftin, on behalf of himself and any entity he directly or indirectly owns or controls except for the Debtor (Mr. Loftin and any such entities, collectively, "Loftin"), stipulate and agree that VM owns and holds a loan (the "Loan") in principal amount of $25,000,000, plus interest, costs, charges, expenses, fees and other amounts, in the total amount of $32,707,426.13 as of July 1, 2013 (the "Indebtedness"). The Debtor and Loftin stipulate and agree that the Loan and the Indebtedness are legal, valid and binding obligations of the Debtor, without objection, defense, counterclaim or offset of any kind; the liens and security interests granted to secure the Loan and the Indebtedness are valid, binding, perfected, enforceable, first priority (except for liens securing real and personal property taxes assessed against the Property) liens and security interests in the Property, and are not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination, of any kind, pursuant to the Bankruptcy Code or applicable nonbankruptcy law by any entity. The Debtor and Loftin do not have, and hereby waive, any claims, counterclaims, causes of action,

defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against VM and its affiliates, subsidiaries, agents, officers, directors, employees, predecessors, attorneys and advisors in respect of the Loan or the Indebtedness; provided, however, that Loftin may raise any matter waived herein as a defense to Count IV in the civil action pending in the United States District Court for the Southern District of Florida, styled *VM South Beach, LLC v. Casa Casuarina, LLC, et al.*, No. 11-24612-CIV-ROSENBAUM (the "District Court Action"), up to and including the amount of any money damages to which VM may otherwise be entitled in the District Court Action.

10. Notwithstanding the foregoing paragraph 9,

(a.) any party in interest, including the Debtor but excluding Loftin, may object to VM's proof of claim in accordance with the procedures in paragraph 6; provided, however, that such objection must be filed on or before the Objection Deadline and failure to object timely waives any such objection; and

(b.) in the event that Herbert Stettin, as Chapter 11 trustee in In re Rothstein Rosenfeld Adler, P.A., No. 09-34791-RBR, or his successor (the "Trustee"), timely object to VM's proof of claim in accordance with the procedures in paragraph 6, no stipulation or waiver of the Debtor or Loftin in the foregoing paragraph 9 shall affect, alter or otherwise impair the claims or defenses of the Trustee as against VM.

11. In the interests of judicial economy and to facilitate the sale process, VM and Mr. Loftin agree to a further stay of the District Court Action, and shall file an appropriate stipulation with the District Court requesting such a stay.

11

12. The Debtor will provide VM and the Trustee, and counsel for VM and the Trustee, with unrestricted access to the Auctioneer/Broker and the Cooperating Broker. The Auctioneer/Broker and the Cooperating Broker shall provide VM, the Trustee and their counsel all information they provide to the Debtor and its counsel.

###

Submitted by:

    Joe M. Grant, Esq.
    Marshall Socarras Grant P.L.
    197 S. Federal Highway, Suite 300
    Boca Raton, FL 33432

The party submitting this order shall serve a copy of the signed order on all interested parties and file with the court a certificate of service conforming with Local Rule 2002-1(F).