UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

CASA CASUARINA, LLC,                                    Case No. 13-25645-LMI

                                                        Chapter 11

    Debtor.
_____/

DEBTOR'S MOTION TO APPROVE PREPETITION
SETTLEMENT AGREEMENT BETWEEN THE ESTATE
OF ROTHSTEIN ROSENFELDT ADLER, P.A. AND THE
DEBTOR, LOFTIN FAMILY, LLC, LOFTIN HOSPITALITY, LLC,
LUXURY RESORTS, LLC AND PETER LOFTIN

**The Debtor requests this matter be heard on September 18, 2013, contemporaneous with the Sale Hearing, as any objections to this Motion may be mooted if the sale of the Property yields funds sufficient to pay all creditors in full.**

Debtor, Casa Casuarina, LLC (the "Debtor"), hereby files this Motion to Approve Prepetition Settlement Agreement (the "Agreement") between the Estate of Rothstein Rosenfeldt Adler, P.A. ("RRA") and the Debtor, Loftin Family, LLC ("Loftin Family"), Loftin Hospitality, LLC ("Loftin Hospitality"), Luxury Resorts, LLC ("Luxury Resorts") and Peter Loftin ("Loftin") (collectively the "Loftin Parties"). In support thereof, the Debtor states:

## BACKGROUND

1.    On July 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

2.    The Debtor's sole asset is the ownership of valuable property in Miami Beach, formerly known as the Versace Mansion (the "Property").

3. On July 21, 2011, the Herbert Stettin, as Chapter 11 Trustee for RRA, commenced an adversary proceeding against the Loftin Parties (including Casa Casuarina, LLC) by filing an adversary complaint to avoid and recover certain transfers.

4. Following negotiations, on January 22, 2013, the parties entered into the Agreement. A copy of the Agreement is attached as Exhibit "A." RRA subsequently sought approval of the settlement in the RRA bankruptcy. [Case No. 09-34791, ECF No. 3847].

5. As of the Petition Date, the Agreement had not yet been approved by the Bankruptcy Court in the RRA case. A hearing on that motion is set for September 11, 2013.

6. Pursuant to the Court's Amended Order Authorizing the Debtor to Schedule an Auction Sale and the attachments thereto [ECF No. 60] (the "Sale Procedures Order"), the Property will be sold at an auction to be conducted on September 17, 2013, and a final sale hearing will be held on September 18, 2013. Additionally, pursuant to the Sale Procedures Order, secured creditors will be paid the undisputed portion of their secured claims at closing.

7. Pursuant to Sale Procedures Order, RRA filed a proof of claim, asserting a 9.99% interest (which the Trustee asserts could increase to 49.99% upon the Trustee's election to exercise the option under the Agreement) in legal title to the Property, which he asserts RRA is entitled to have satisfied from proceeds of the auction sale (the "Equity Portion"), and an equitable lien upon the Property to the extent of the Transfers in the amount of $4,921,980.12 (the "Equitable Lien"). The Equity Portion depends on the calculation noted in the Agreement (*see* section 2(B)). Additionally, the amount of the asserted Equitable Lien is not fixed, as the Trustee asserts the Equitable Lien also includes additional amounts of interest, costs, and attorneys' fees. Thus, the total amount claimed by RRA claim remains subject to calculation. [Claim No. 9-1].

8. The parties ultimately agreed to honor the Settlement Agreement as the sole document determinative of the allowed amount of RRA's claim, and seek Bankruptcy Court approval of the Settlement Agreement in both this and the RRA case.

## SETTLEMENT

9. In considering the circumstances, and taking into account the nature of the claims against the Debtor and the risks associated with litigating the matter, the Debtor believes that honoring the terms of the Agreement and causing payment to be made in full, consistent with its terms, is in the best interests of the Estate.

10. As more fully described in the Agreement, in exchange for full releases of all claims by and between the parties, the Loftin Parties and the RRA Trustee have agreed to the following settlement terms, among others:

- Ownership. The Loftin Parties agree and acknowledge that [RRA], beneficially (and of record) owns, controls, and holds, a 9.99% minority membership ownership interest in Luxury Resorts, the sole owner and managing member of Casa (by virtue of Rothstein's use of funds in RRA bank accounts to purchase an equity ownership interest pursuant to the Purchase Agreement and the Member Agreement); provided, however, that the Loftin Parties acknowledge and-agree that the RRA Trustee ("Trustee") has no management control in respect to Luxury Resorts and/or Casa (and his sole obligations are set forth in this Agreement and not any operating agreement). In connection herewith, the Loftin Parties shall concurrently cause to be delivered to Trustee a membership certificate(s) and such other documents requested by Trustee to evidence his 9.99% ownership interest in Luxury Resorts. In addition, the Loftin Parties acknowledge that Rothstein, commencing in or around July 2009, and continuing through until RRA was placed into involuntary bankruptcy, exercised and operated (either directly or through his wholly owned entities) day-to-day control and management of Casa and the Property. Finally, the Loftin Parties hereby recognize the validity and enforceability in favor of Trustee of the Option (as defined below), which is hereby reduced to, and may be exercised for, $11,250,000.

- Cash Payment from Sale — Settlement Payment. The [Debtor] shall pay to the Trustee [from the Sale proceeds], an amount equal to either (1) 9.99% of the Net Sales (as defined below), or, (2) if the Option is exercised by Trustee, 49.99% of the Net Sales (as applicable, the

"Settlement Payment"). For purposes of this Agreement, the term "Net Sales" shall mean and refer to all of the gross sales proceeds and other consideration, sums and amounts (whether paid in money, debt or otherwise) received or designated payable from or pursuant to a Sale, less specified amounts and expenses (collectively, "Expenses"), as follows: (i) reasonably customary, and actually incurred and disbursed closing costs and brokerage fees, as reflected on a fully-executed settlement/closing statement; (ii) plus the actual VM South Beach, LLC purported mortgage amount displayed on a settlement/closing statement and disbursed in favor of VM South Beach, LLC (which such amount is inclusive of all principal, default and non-default interest, fees, charges, and attorney's fees, as evidenced by a written payoff from VM South Beach, LLC) (provided, however, that such amount is subject to ongoing reduction based on current litigation efforts by or on behalf of the Loftin Parties and/or Trustee, which if successful, shall reduce/eliminate such amount); and (iii) plus, an amount equal to $11,250,000, if, and only and if, Trustee elects to exercise the Option, by providing the Loftin Parties with written notice of such election (to be given within 3 business days after the Loftin Parties provide Trustee with written notice of an impending Sale, and a closing/settlement statement which reflects the designated Settlement Payment thereon). The term "Sale", as used herein, shall mean any transfer to a bona-fide third party of title to the Property, or any transfer to a bona-fide third party of the ownership interests in Casa, Luxury Resorts or any related affiliate, The term "Option", as used herein, shall mean the election by Trustee, in his sole discretion, to acquire an additional 40% ownership interest in Luxury Resorts (so that Trustee owns a total of 49.99% of Luxury Resorts), through the use of a cashless option (wherein, instead of Trustee providing any cash consideration for the Option, the $11,250,000 price shall be deemed an Expense).

11. While not contemplated by the Settlement Agreement, the Debtor and RRA agree that RRA's claim is subordinate to the allowed secured claims of VM South Beach LLC, Alexandra Albu, Joseph Bonifacio, Michael Pospisil, Monique Alfonso, and Ranko Salvujevic, and the Miami-Dade County Tax Collector, and shall not be paid from the proceeds of the sale unless such claims are paid in full, but RRA's claim is superior to any and all other claims, if any. There being no other timely filed claims, the RRA claim is to be paid in full if sales proceeds following the satisfaction of the claims of VM South Beach LLC, Alexandra Albu, Joseph Bonifacio, Michael Pospisil, Monique Alfonso and Ranko Salvujevic, and the Miami-Dade County Tax Collector, leave funds that suffice to pay the amounts due RRA under the Agreement.

**RELIEF REQUESTED**

12. By this Motion, the Debtor respectfully requests that the Court enter an order, pursuant to Bankruptcy Rule 9019, approving the Settlement Agreement and authorizing the transactions contemplated thereunder.

13. Bankruptcy Rule 9019 provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968). "Settlements are favored in bankruptcy because they serve to minimize litigation, provide a means for efficient resolution of disputes, and help to expedite the administration of the bankruptcy estate." *In re Genesis Health Ventures*, 266 B.R. 591, 619 (Bankr. D. Del. 2001); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

14. Approval of a settlement in bankruptcy proceedings is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *In re Arrow, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). The test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *Id.* at 891.

15. The Debtor believes that the settlement is reasonable and in the best interests of the estate, and will resolve all disputes among the parties while avoiding delay and costly litigation with respect thereto. For all the foregoing reasons, the Debtor believes that good cause exists for approval of the Settlement Agreement.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit "B", approving the proposed settlement and Settlement Agreement, authorizing transactions contemplated thereunder, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
Attorneys for the Debtor
197 South Federal Highway, Suite 300
Boca Raton, Florida  33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email: jgrant@msglaw.com

By:   /s/ Joe M. Grant
JOE M. GRANT
Florida Bar No. 137758
ADAM D. MARSHALL
Florida Bar No. 579823
LAWRENCE E. PECAN
Florida Bar No. 99086