**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

CASA CASUARINA, LLC,                                    Case No. 13-25645-LMI

                                                         Chapter 11

      Debtor.
_____/

**NOTICE OF FILING ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT BETWEEN THE CHAPTER 11 TRUSTEE AND CASA CASUARINA, LLC, LOFTIN FAMILY, LLC, LOFTIN HOSPITALITY, LLC, LUXURY RESORTS, LLC AND PETER LOFTIN [D.E. 5242]**

Michael I. Goldberg ("Goldberg"), as Trustee for the RRA Liquidating Trust ("RRA"), hereby gives notice of filing the *Order Granting Motion to Approve Settlement Agreement Between the Chapter 11 Trustee and Casa Casuarina, LLC, Loftin Family, LLC, Loftin Hospitality, LLC, Luxury Resorts, LLC and Peter Loftin* [D.E. 5242] entered by The Honorable Raymond B. Ray in *In re: Rothstein Rosenfeldt Adler, P.A.*, 09-34791-RBR (Bankr.S.D.Fla).

Dated: September 16, 2013        Respectfully submitted,

                                              **BERGER SINGERMAN LLP**
                                              Attorneys for the Liquidating Trustee
                                              1450 Brickell Avenue, Suite 1900
                                              Miami, Florida  33131
                                              Tel.: (305) 755-9500
                                              Fax: (305) 714-4340

                                          By:   /s/ Isaac M. Marcushamer
                                              Paul Steven Singerman
                                              Florida Bar No. 378860
                                              singerman@bergersingerman.com
                                              Isaac M. Marcushamer
                                              Florida Bar No.  60373
                                              imarcushamer@bergersingerman.com

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF upon all parties and counsel of record registered to receive CM/ECF electronic notifications from the Bankruptcy Court in this case on this 16th day of September, 2013.

By: _/s/ Isaac M. Marcushamer_
Isaac M. Marcushamer

5203677-1



**ORDERED in the Southern District of Florida on September 12, 2013.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                         CASE NO.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,     CHAPTER 11

    Debtor.
_____/

**ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT
BETWEEN THE CHAPTER 11 TRUSTEE AND CASA CASUARINA, LLC,
LOFTIN FAMILY, LLC, LOFTIN HOSPITALITY, LLC, LUXURY
RESORTS, LLC AND PETER LOFTIN**

**THIS CAUSE** came before the Court for hearing on September 11, 2013, upon the Trustee's *Motion to Approve Mediation Settlement Agreement Between The Chapter 11 Trustee and Casa Casuarina, LLC, Loftin Family, LLC, Loftin Hospitality, LLC, Luxury Resorts, LLC and Peter Loftin*, [D.E. 3847] (the "Motion") filed by the Trustee on February 2, 2013. The Court, having reviewed the Motion and the Court file, having found that proper notice of the Motion has been given, and having heard the presentations of counsel, finds it appropriate to grant the Motion. Accordingly, it is -

**ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The terms of the Settlement Agreement are **APPROVED**, with the following modification. Section 2C of the Settlement Agreement (the "Mortgage Provisions") is not effective and is not approved, pursuant to the modification announced in open Court.

3. The terms of the Settlement Agreement attached hereto as Exhibit "1," are approved and incorporated herein in their entirety, except as otherwise noted in paragraph 2 above. However, the Settlement Agreement shall not become effective until the Settlement Agreement is approved by the Bankruptcy Court in *In re Casa Casuarina, LLC*,13-25645-LMI (Bankr. S.D. Fla. 2013).

4. Although not specifically mentioned in the Settlement Agreement, RRA's claim in the Casa Casuarina, LLC Chapter 11 is subordinate to the allowed secured claims of VM South Beach LLC, Alexandra Albu, Joseph Bonifacio, Michael Pospisil, Monique Alfonso, and Ranko Salvujevic , and the Miami-Dade Tax Collector, and shall not be paid from the proceeds of the sale of Casa Casuarina's real property, unless such claims are paid in full, but is superior to any and all other claims, if any.

5. The Court retains jurisdiction to enforce the terms of the Settlement Agreement.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Ave, Suite 1900
Miami, FL 33131
Tel.  (305) 755-9500
Fax   (305) 714-4340
singerman@bergersingerman.com

Copy furnished to:
Paul Steven Singerman, Esq.
*(Paul Steven Singerman, Esq. is directed to serve this Order to all parties of interest and to file a Certificate of Service.)*

# EXHIBIT 1

# SETTLEMENT AGREEMENT

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("*Settlement Agreement*" or "*Agreement*") is made this day of January, 2013 (the "*Effective Date*"), by and among: **HERBERT STETTIN**, as the Chapter 11 Trustee ("*Stettin*" or "*Trustee*") of Rothstein Rosenfeldt Adler, P.A. ("*RRA*" or "*Debtor*"); and **CASA CASUARINA, LLC** ("*Casa*"), **LOFTIN FAMILY, LLC** ("*Loftin Family*"), **LOFTIN HOSPITALITY, LLC** ("*Loftin Hospitality*"), **LUXURY RESORTS, LLC** ("*Luxury Resorts*"), and **PETER LOFTIN** ("*Loftin*")(jointly and severally, Loftin Family, Loftin Hospitality, Luxury Resorts and Loftin are hereinafter collectively referred to as the "*Loftin Parties*"; collectively, the Loftin Parties and the Trustee are hereinafter referred to as the "*Parties*").

## RECITALS

**WHEREAS**, on November 10, 2009, an involuntary Chapter 11 proceeding was commenced against RRA in and for the Southern District of Florida United States Bankruptcy Court (the "*Bankruptcy Court*" or "*Court*") bearing the title: *In Re: Rothstein Rosenfeldt & Adler, P.A.*, Case No.: 09-34791-RBR (the "*Bankruptcy Case*");

**WHEREAS**, on November 20, 2009, the Bankruptcy Court entered an order directing the appointment of a trustee [DE #30]; on November 20, 2009, the Office of the United States Trustee selected Stettin as the Trustee in this case [DE #35]; and on November 25, 2009, Stettin's appointment as Trustee was ratified by the Bankruptcy Court [DE #55];

**WHEREAS**, the Bankruptcy Court entered an Order for Relief on November 30, 2009 [DE #66];

**WHEREAS**, on November 11, 2011, the Trustee commenced an Adversary Proceeding in the U.S. Bankruptcy Court for the Southern District of Florida (Adversary Case No. 11-02779-RBR) (the "*Adversary Proceeding*") in which he alleges that (i) the Debtor made certain transfers to certain of the Loftin Parties, from RRA bank accounts, that are fraudulent transfers (the "*Transfers*") subject to the provisions of Sections 544, 548 and 550 of the Bankruptcy Code and Chapter 726 of the Florida Statutes (2012); and that (ii) the Trustee holds other legal and equitable claims against the Loftin Parties under applicable state and/or federal law, as property of the estate, pursuant to 11 U.S.C. § 541 (collectively referred to herein as the "*Claims*");

**WHEREAS**, Casa owns the real property legally described as: Lots 5, 6 and 7, in Block 16, of OCEAN BEACH ADDITION NO. 2, according to the Plat thereof, as recorded in Plat Book 2, at Page(s) 56, of the Public Records of Miami-Dade County, Florida a/k/a the Versace Mansion (the "*Property*");

**WHEREAS**, in or around July, 2009, Loftin, Luxury Resorts, Casa and Scott W. Rothstein ("*Rothstein*") through his limited liability company, IDNLGEAH, LLC, entered into a Membership Purchase and Option Agreement (the "*Purchase Agreement*") and a Member Agreement (the "*Member Agreement*"), wherein Rothstein or his affiliate purchased a 9.99% membership interest in Luxury Resorts, the sole owner and managing member of Casa. In addition, during this time, Loftin, Casa, and Rothstein entered into Operating Agreement,

wherein Rothstein (either directly or through his wholly owned entities) assumed control and management over the day-to-day operations of Casa and the Property;

**WHEREAS**, the Purchase Agreement also granted Rothstein or his affiliate an option to purchase an additional 40% ownership interest in Luxury Resorts for an option exercise price of $20,000,000 (reduced herein to $11,250,000) (the effect of which would, if exercised, create in Rothstein or his affiliate a 49.99% ownership interest in Luxury Resorts) ;

**WHEREAS**, Rothstein used RRA monies to purchase the 9.99% ownership interest in Luxury Resorts;

**WHEREAS**, VM South Beach, LLC ("***VM South Beach***") commenced a mortgage foreclosure action in and for the Southern District of Florida United States District Court (the "***District Court***") bearing the title: *VM South Beach v. Casa Casuarina, LLC, et al.,* Case No.: 11-24612-CIV-ROSENBAUM/Seltzer (the "***Mortgage Foreclosure Case***")];

**WHEREAS**, as part of settling certain matters and claims, Trustee shall receive from the sale of the Property the Settlement Payment (as defined below), as may be increased or decreased, as is further described below;

**WHEREAS**, in order to secure the payment of the Settlement Payment and other obligations of the Loftin Parties under this Agreement, certain of the Loftin Parties desire to execute and deliver to Trustee a standard commercial mortgage (in form reasonably approved by Trustee, the "***Mortgage***"), which the Loftin Parties' represent shall provide for a valid mortgage lien and security interest in and to property described on **Exhibit A** attached hereto (the "***Property***");

**WHEREAS**, in addition to the foregoing, the Loftin Parties and the Trustee agree to perform and cause certain other matters to occur, as is described below; and

**WHEREAS**, the Loftin Parties have denied Trustee's right to recovery regarding the Claims and have asserted numerous affirmative defenses thereto, in addition to potential counterclaims and setoff claims (yet to be asserted), and are entering into this Agreement solely to avoid the uncertainty of litigation as well the expenditure of time and money in connection therewith.

### TERMS OF AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing and the agreements set forth herein, and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Loftin Parties and the Trustee agree as follows:

1. <u>Recitals; Exhibits</u>. The above Recitals are true and correct, and incorporated herein by this reference. The exhibits attached to this Agreement are also true and correct, and therefore incorporated herein by this reference.

2. <u>Luxury Resorts Ownership; Settlement Payment; Mortgage</u>: The Parties mutually

2

unconditionally acknowledge and agree hereby that:

    A.     <u>Current Ownership in Luxury Resorts; Management by Rothstein</u>. Trustee, in his representative capacity on behalf of Debtor, beneficially (and of record) owns, controls, and holds, a 9.99% minority membership ownership interest in Luxury Resorts, the sole owner and managing member of Casa (by virtue of Rothstein's use of funds in RRA bank accounts to purchase an equity ownership interest pursuant to the Purchase Agreement and the Member Agreement); provided, however, that the Loftin Parties acknowledge and agree that Trustee has no management control in respect to Luxury Resorts and/or Casa (and his sole obligations are set forth in this Agreement and not any operating agreement). In connection herewith, the Loftin Parties shall concurrently cause to be delivered to Trustee a membership certificate(s) and such other documents requested by Trustee to evidence his 9.99% ownership interest in Luxury Resorts. In addition, the Loftin Parties acknowledge that Rothstein, commencing in or around July 2009, and continuing through until RRA was placed into involuntary bankruptcy, exercised and operated (either directly or through his wholly-owned entities) day-to-day control and management of Casa and the Property. Finally, the Loftin Parties hereby recognize the validity and enforceability in favor of Trustee of the Option (as defined below), which is hereby reduced to, and may be exercised for, $11,250,000.

    B.     <u>Cash Payment from Sale – Settlement Payment</u>. The Loftin Parties shall pay to the Trustee [from or pursuant to a Sale (as defined below)], an amount equal to either (1) 9.99% of the Net Sales (as defined below), or, (2) if the Option is exercised by Trustee, 49.99% of the Net Sales (as applicable, the "***Settlement Payment***"). For purposes of this Agreement, the term "***Net Sales***" shall mean and refer to all of the gross sales proceeds and other consideration, sums and amounts (whether paid in money, debt or otherwise) received or designated payable from or pursuant to a Sale, less specified amounts and expenses (collectively, "***Expenses***"), as follows: (i) reasonably customary, and actually incurred and disbursed closing costs and brokerage fees, as reflected on a fully-executed settlement/closing statement; (ii) <u>plus</u> the actual VM South Beach purported mortgage amount displayed on a settlement/closing statement and disbursed in favor of VM South Beach (which such amount is inclusive of all principal, default and non-default interest, fees, charges, and attorney's fees, as evidenced by a written payoff from VM South Beach) (provided, however, that such amount is subject to ongoing reduction based on current litigation efforts by or on behalf of the Loftin Parties and/or Trustee, which if successful, shall reduce/eliminate such amount); and (iii) <u>plus</u>, an amount equal to $11,250,000, if, and only and if, Trustee elects to exercise the Option, by providing the Loftin Parties with written notice of such election (to be given within 3 business days

3

after the Loftin Parties provide Trustee with written notice of an impending Sale, and a closing/settlement statement which reflects the designated Settlement Payment thereon). The term "**Sale**", as used herein, shall mean any transfer to a bona-fide third party of title to the Property, or any transfer to a bona-fide third party of the ownership interests in Casa, Luxury Resorts or any related affiliate. The term "**Option**", as used herein, shall mean the election by Trustee, in his sole discretion, to acquire an additional 40% ownership interest in Luxury Resorts (so that Trustee owns a total of 49.99% of Luxury Resorts), through the use of a cashless option (wherein, instead of Trustee providing any cash consideration for the Option, the $11,250,000 price shall be deemed an Expense). For illustrative purposes only, and in no event binding upon the Parties, (x) if a Sale occurs of the Property for $100,000,000, the actual closing costs and brokerage fees are $4,000,000, the purported VM South Beach mortgage amount is $26,000,000, and Trustee elects to exercise his Option as provided above, then the amount of the Net Sales shall equal $58,750,000 (because Expenses equaled $41,250,000), and the Settlement Payment payable to Trustee shall equal $29,369,125 (since Trustee shall own 49.99% of Luxury Resorts); (y) if a Sale occurs of the Property for $40,000,000, the actual closing costs and brokerage fees are $4,000,000, the purported VM South Beach mortgage amount is $26,000,000, and Trustee elects not to exercise his Option, then the amount of the Net Sales shall equal $10,000,000 (i.e., the Expenses shall not include the Option), and the Settlement Payment payable to Trustee shall equal $999,000 (since Trustee shall own 9.99% of Luxury Resorts); and (z) if a Sale occurs of the Property for $80,000,000, the actual closing costs and brokerage fees are $4,000,000, the purported VM South Beach mortgage amount is $26,000,000, and Trustee elects to exercise his Option, then the amount of the Net Sales shall equal $38,750,000 (because Expenses equaled $41,250,000), and the Settlement Payment payable to Trustee shall equal $19,371,125 (since Trustee shall own 49.99% of Luxury Resorts). The Settlement Payment shall be due and payable to Trustee immediately at his election upon any Sale.

C. Mortgage. The relevant Loftin Parties shall execute and deliver the Mortgage (which shall secure the obligations of this Agreement). The Mortgage shall provide, among other provisions typical to a commercial mortgage between a commercial lender and commercial borrower, a future advance clause. Trustee is entitled immediately to record the Mortgage, at his cost, in the public records of Miami-Dade County, Florida (and/or seek an equitable lien as Trustee elects). The Loftin Parties specifically authorize Trustee to file any and all financing statements desired by Trustee to be filed in connection with the Mortgage. The amount of the Settlement Payment (and corresponding indebtedness) is subject to adjustment based upon the Net Sales generated by a Sale of the Property.

4

       The Parties further agree that to the extent of any conflict between this Agreement and the Mortgage, this Agreement shall prevail and control.

   D. <u>Market the Property.</u> The Loftin Parties shall continue to market the Property on a commercially reasonable constant basis (until and through the consummation of a Sale), and shall provide the Trustee with reasonable access to the respective brokers of the Property to allow the Trustee to ascertain the progress in regards to prospective Sales (and/or showings and interest showed by prospective buyers). More specifically, the Trustee's access to the brokers shall include upon the Trustee's request, information and periodic reports from the brokers detailing sales prospects, proposals, offers, advertising, and the broker's assessment of the likelihood of a Sale of the Property at different price points; provided, however, Trustee shall not materially impede the efforts to market or sell the Property (and Trustee shall not provide conflicting instructions to the brokers). The Loftin Parties shall not sell the Property, Casa or Luxury Resorts, to an affiliate or related party (except with Trustee's express permission).

   E. <u>Trustee's Actions.</u> The Trustee will continue to take such action as he deems reasonable and necessary to perform the duties assigned to him by the Bankruptcy Court, including, but not limited to, directing his attorneys to take further action to fulfill the Parties' mutual objectives of staying the Mortgage Foreclosure Case and continuing to exercise his good faith efforts to enjoin, stay and assist with the defense of the Mortgage Foreclosure Case.

   F. <u>Final Approval</u>. Upon the payment to Trustee of the Settlement Payment, the Trustee shall dismiss the Adversary Proceeding with Prejudice, with the Bankruptcy Court retaining jurisdiction to enforce the terms of the Settlement Agreement.

 3. <u>Additional Rent</u>: In addition to the Settlement Payment, the Trustee shall be entitled to receive from the Loftin Parties the following additional amounts/sums:

   A. If the District Court denies the Motion of VM South Beach for the assignment of rents [D.E. 120], then the Trustee shall immediately be entitled to receive a sum that equals 9.99% of all rents, revenues, proceeds and profits (as such terms may be as broadly construed as possible), derived from, under, or as a result of the Property. Such proportional amount, if applicable, shall be due and payable to Trustee immediately upon receipt of any such rents, revenues, proceeds and profits, by any of the Loftin Parties (collected in the month after the Order of the Bankruptcy Court approving the Settlement Agreement becomes a Final Non-Appealable Order, and for all months thereafter until a Sale of the Property).

5

4.   <u>General Release by the Trustee</u>.   Upon the Order of the Bankruptcy Court approving the Settlement Agreement becoming a Final Non-Appealable Order, the Trustee, on behalf of RRA, and any successors and assigns, does hereby release, waive and discharge the Loftin Parties from any and all causes of actions, liabilities and claims, whether in law or in equity, known or unknown, foreseen or unforeseen, matured or unmatured, whether or not hidden or concealed, based on tort, fraud, contract or otherwise, and/or any other obligations, claims, interests, or debts of any kind, which the Trustee, RRA, the Debtor's Estate or the Debtor's Estate's representatives, agents and attorneys, from the beginning of time heretofore possessed or may possess against the Loftin Parties in connection with RRA, and the Adversary Proceeding, including, but not limited to, the Claims; provided, however, that the foregoing release shall not serve to release any of the rights, duties and/or obligations of any of the Loftin Parties as provided in this Settlement Agreement, any document executed contemporaneously herewith, and/or any exhibit attached hereto.

5.   <u>General Release by the Loftin Parties</u>.   Upon the Order of the Bankruptcy Court approving the Settlement Agreement becoming a Final Non-Appealable Order, the Loftin Parties and their successors and assigns (the foregoing collectively referred to as the "<u>Loftin Party Releasors</u>"), do hereby release, waive, and discharge all rights, causes of actions, liabilities and claims against the Trustee, RRA, the Debtor, its estate or its property, in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether or not hidden or concealed, based on tort, fraud, contract or otherwise, and/or any other obligations, claims, interests, or debts of any kind, which the Loftin Party Releasors, from the beginning of time, heretofore possessed or may possess against the Trustee, RRA, the Debtor's Estate or the Debtor's Estate's representatives, agents and attorneys, in connection with RRA, including but not limited to all claims which have been alleged by the Loftin Party Releasors; provided, however, that the foregoing release shall not serve to release any of the rights, duties and/or obligations of Trustee as provided in this Settlement Agreement, any document executed contemporaneously herewith, and/or any exhibit attached hereto.

6.   <u>No Admission</u>.   Nothing contained herein shall be deemed a representation or admission of any fault or liability by the Loftin Parties or Trustee to any issue involved in the Adversary Proceeding or Bankruptcy Case, or for any other purpose whatsoever.

7.   <u>Attorneys' Fees and Costs</u>.   Each Party shall bear his/its own attorneys' fees and costs incurred in connection with the negotiation and documentation of this Settlement Agreement and the Bankruptcy Case. In the event any litigation is necessary to enforce any term or performance of this Settlement Agreement, the prevailing party in any such dispute shall be entitled to recover his/its attorneys' fees and costs from the other party.

8.   <u>Entire Agreement</u>.   This Settlement Agreement constitutes the entire agreement of the Parties hereto regarding the subject matter hereof. Each of the Parties acknowledges and agrees that there are no communications or oral understandings contrary, different, or that in any way restrict this Settlement Agreement and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are superseded in all respects and are null and void upon the execution of this Settlement Agreement.

9. <u>Amendment</u>. No waiver, modification or amendment of the terms of this Settlement Agreement shall be valid or binding, unless made in writing, signed by each of the Parties, and then only to the extent as set forth in such written waiver, modification, or amendment.

10. <u>Counterparts</u>. The Parties may execute this Settlement Agreement in counterparts, which shall have the same force and effect as if the Parties had signed the same instrument. Signatures transmitted by facsimile or email shall have the same effect as original signatures.

11. <u>Retention of Jurisdiction</u>. Any claim or litigation arising from or in connection with this Settlement Agreement, or the order approving it, shall be exclusively maintained in the Bankruptcy Court, and the order approving this Settlement Agreement shall expressly provide that said Court shall retain jurisdiction to enforce such order, as well as the terms of this Settlement Agreement.

12. <u>Choice of Law</u>. This Settlement Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of law principles.

13. <u>Default</u>. The occurrence of any one or more of the following events shall constitute a "*Default*" under this Agreement:

   (a) the failure by the Loftin Parties to promptly pay, when due, the Settlement Payment; or

   (b) the failure by the Trustee or Loftin Parties to punctually perform all of their respective non-payment obligations under this Agreement, when due (including the Loftin Parties' marketing the Property for sale until the Property is sold); or

   (c) the occurrence of any "default" or "breach" under any other agreement executed concurrently herewith (including, but not limited to, the Mortgage).

14. <u>Remedies</u>. At the sole election of the non-breaching Party, and without notice, upon the occurrence of any Default, such non-breaching Party shall have all remedies available under this Agreement, Mortgage, and at law or in equity. Failure to exercise this right shall not constitute a waiver of the right to exercise same in the event of any subsequent Default. The rights, remedies and powers of the non-breaching Party hereof, as provided in this Agreement, the Mortgage and in all of the other documents are cumulative and concurrent, and may be pursued singly, successively or together against the breaching Party, the Property and any other security given at any time to secure the repayment hereof, all at the sole discretion of the non-breaching Party hereof.

15. <u>Neutral Interpretation</u>. In the event any dispute arises between the Parties with respect to the interpretation of any term of this Settlement Agreement, each of the Parties shall

7

4747041-6
1/21/13 9:02 AM

be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party, shall be inapplicable.

16. <u>Advice of Counsel</u>. The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement and that they have read this Settlement Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect hereof.

17. <u>Binding Effect</u>. This Settlement Agreement and its terms shall be binding upon the Trustee and the Loftin Parties, along with their respective successors and assigns.

18. <u>Divisions and Headings</u>. The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

19. <u>Authority to Execute</u>. Each party to this Settlement Agreement represents and warrants that he/she is duly authorized to execute this Settlement Agreement and that the person through whom each party executes this Settlement Agreement is fully and duly empowered and authorized to execute it on the respective party's behalf.

20. <u>Final Approval</u>. This Settlement Agreement is subject to final approval of the Bankruptcy Court (as evidenced by a Final Non-Appealable Order). Upon the execution of this Settlement Agreement, the Trustee shall promptly file a motion pursuant to Bankruptcy Rule 9019, with notice to all parties on the Bankruptcy Court's general matrix, seeking such approval. The Loftin Parties agree to fully cooperate and execute any and all documents and perform any acts requested by Trustee to effectuate the foregoing approval(s).

21. <u>Benefit</u>. The Parties collectively acknowledge substantial benefit and consideration in connection with the entering into this Settlement Agreement and consummating the transactions contemplated hereunder.

22. <u>No Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective estates, heirs, legal representatives, successors and assigns including any additional or replacement trustee that may be appointed or elected pursuant to the Bankruptcy Code in this or any superseding case; provided, however, that no assignment or transfer of this Settlement Agreement shall be permissible by any of the Parties without the written consent of the applicable Party so affected.

23. <u>No Third-Party Beneficiaries.</u> Except in connection with the releases of Sections 4 and 5 above, there are no third-party beneficiaries intended by this Settlement Agreement.

24. <u>Notice</u>. All notices required or permitted to be given under this Settlement Agreement shall be in writing and shall be deemed delivered when personally delivered or received from an overnight delivery courier service in addition to service via e-mail, addressed as follows:

8

If to the Loftin Parties:

Chad P. Pugatch, Esq.
George L. Zinkler, III, Esq.
Rice Pugatch Robinson & Schiller, P.A.
101 NE Third Avenue, Suite 1800
Fort Lauderdale, FL 33301
Tel: 954-462-8000
Fax: 954-462-4300
E-mail: CPugatch@rprslaw.com
E-mail: GZinkler@rprslaw.com

with a copy to:

Adam J. Steinberg, Esq.
The Law Offices of Adam J. Steinberg, P.A.
200 S. Andrews Avenue, Suite 903
Fort Lauderdale, FL 33301
Tel: 954-548-3357
Fax: 954-222-4192
E-mail: Adam@AdamSteinbergLaw.com

If to RRA:

Herbert Stettin, Chapter 11 Trustee
One Biscayne Tower
Two South Biscayne Boulevard, Suite 3700
Miami, FL 33131
E-mail: hmstettin@bellsouth.net

with a copy to:

Frank Scruggs, Esq.
Charles H. Lichtman, Esq.
Berger Singerman, LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
E-mail: FScruggs@bergersingerman.com
E-mail: CLichtman@bergersingerman.com

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed and delivered as of the date first above written.

Signed and dated as of this 12 day of January, 2013.

By the Loftin Parties:

_____
Peter Loftin

**Casa Casuarina, LLC**

By: _____

_____Peter Loftin_____ (print name)

_____Mng_____ (title)

**Loftin Family, LLC**

By: _____

_____Peter Loftin_____ (print name)

_____Mng_____ (title)

**Loftin Hospitality, LLC**

By: _____

_____Peter Loftin_____ (print name)

_____Mng_____ (title)

**Luxury Resorts, LLC**

By: _____

_____Peter Loftin_____ (print name)

_____Mng_____ (title)

By the Trustee:

_____
**Herbert Stettin, Chapter 11 Trustee of the Debtor, Rothstein Rosenfeldt Adler, P.A.**

10

4747041-6
1/21/13 9:02 AM

Settlement Agreement Between Parties

_[signature]_, chapter 11 trustee of
Rothstein Rosenfeldt Adler PA

Jan 22 2013

11

# EXHIBIT A

## LEGAL DESCRIPTION

[Insert legal description.]

Lots 5, 6 and 7, in Block 16, of OCEAN BEACH ADDITION NO. 2, according to the Plat thereof, as recorded in Plat Book 2, at Page(s) 56, of the Public Records of Miami-Dade County, Florida.

84182011_3